# MEMORANDA

OF

## CASES NOT REPORTED IN FULL.

HORACE STILWELL, AN INFANT, BY GUARDIAN, APPEL-
LANT, v. EBENEZER MELROSE, ADMINISTRATOR, ETC.,
RESPONDENT.

*What is an interest in real estate — Payment by administrator of interest on
mortgage on land afterwards sold for intestate's debts, allowed to him on his
accounting — Allowance, for payment of interest bearing debts by adminis-
trator out of his own funds.*

APPEAL from the decree of the surrogate of the county of
Cattaraugus, entered on the final acounting of the defendant as the
administrator of John Mitchell.

The court, at General Term, said: " The first objection to the
decree of the surrogate is, ' because it does not charge the said
administrator with the avails of a certain cheese factory, of which
decedent was possessed at the time of his death, and the question
presented on this objection is, whether the cheese factory was
personal estate which went to the administrator, or was real estate
which descended to the heir.'

" The provisions of the statute as to what shall be deemed
assets and shall go to the administrators, to be applied and dis-
tributed as part of the personal estate of their testator or intes-
tate, is to be found in 2 Revised Statutes (2d ed.), 24, section 6,
and the question is made upon the first subdivision of that section,
which is as follows: '1. Leases for years. Lands held by the de-
ceased from year to year, and estates held by him for the life of
another person.' Or upon the fourth subdivision, which is as
follows: ' Things annexed to the freehold or to any building for
the purpose of trade or manufacture, and not fixed into the wall of

a house so as to be essential to its support.' The eighth section further provides that ' the right of an heir to any property not enumerated in the preceding sixth section, which, by the common law, would descend to him, shall not be impaired by the general words of that section.'

" John Mitchell, the intestate, died unmarried and without issue, leaving, as his next of kin, his mother and a sister and the children of a deceased sister, of whom the appellant is one. At the time of his death the intestate was possessed of one undivided fifth in a certain cheese factory, situate in the town of Lyndon, in Cattaraugus county. The cheese factory was held under an instrument bearing date on the 11th of December, 1866, executed by Thomas Case, who appears to have been the owner of the fee, by which said Case for and in consideration of the rents, covenants and agreements therein contained, on the part of the parties of the second part, their executors, administrators and assigns, ' granted, demised and leased ' to the parties of the second part, ' and to their heirs, executors and assigns,' all of a certain parcel of land therein described, and containing the further provision, that ' whereas the said party of the second part intends to erect a cheese factory on the above-described premises, and in consideration thereof the said party of the first part hereby grants to the party of the second part the use of the above-described premises, provided the second party erect a cheese or butter factory within two years from the date hereof upon said premises, so long as said premises shall be used for a cheese or butter factory. * * * The right of the second party, under this lease, shall not be lost or destroyed by a failure of said second party to occupy the same for any time not exceeding twelve years ; and if the said second party should elect not to use said premises for the above-mentioned purpose at any time, the said second party shall have the full term of two years to remove the buildings and fixtures from said premises after said election ; and such election to discontinue the use of said premises, may be at the end of twelve years aforesaid, and the said second party shall have the full term of two years thereafter to remove said buildings and fixtures.' The above-mentioned instrument was duly executed by the grantor, under his hand. and seal, and duly acknowledged. The cheese

factory was built upon the described premises prior to May, 1867, and has been used as such from that time ever since.

" We think the interest granted by the said instrument, executed by Thomas Case, was real estate. It was what is termed in law 'a qualified base or determinable fee.' (4 Kent's Com., 9.) It was an interest which may continue forever, but is liable to be determined by the election of the parties of the second part, or if they shall have ceased to occupy the same for the space of twelve years. Under the statute of descents, it descended to the mother of the intestate, who was living at his death, and it was not assets in the hands of the administrator. It appears that the rents, issues and profits of the cheese factory had been in form paid over to the defendant in checks, but he passed the same to the mother, to whom he claims they belonged. (See 1 R. S. [2d ed.], §§ 1 and 27, p. 742.)

This grant was not in violation of section 14 of article 1 of the Constitution, because no rent or service of any kind was reserved therein.

" The next objection to the decree of the surrogate is that two payments, one of $300 and one of $103.70, which appeared among the administrator's credits, were improper charges, and should be disallowed, as such payments were upon a debt secured by a mortgage upon the decedent's real estate. It is conceded that the debt was due and was paid by the administrator, and that the land which was embraced in the mortgage was sold by order of the surrogate, the personal estate being insufficient to pay the debts. The payment by the administrator of these mortgage debts, was probably an irregularity. By 1 Revised Statutes (2d ed.), § 4, p. 740, the heir is required to satisfy such a mortgage out of his own property, without resorting to the executor or administrator. The record of the proceedings for the sale of the land is by stipulation omitted from the case, but we infer that it had become apparent that the land covered by the mortgage must be sold under the order of the surrogate for the payment of debts.

" The intestate died in January, 1870. The administrator made the payments on the mortgage in the spring and summer of 1871, and the sale of the land mortgaged was completed in the spring

of 1872. Probably the payments made by the administrator on the mortgage were made to prevent an anticipated foreclosure and the expenses thereof, when it became apparent that the equity of redemption would have to be sold by order of the surrogate. The effect of the decree of the surrogate is to allow the administrator to retain, out of the proceeds of the sale of the land, the sums he had paid on the mortgage of the land sold, and we do not see how any injustice could be done to the appellant by such allowance. Presumptively the land brought as much more at the sale, as the amount paid by the administrator in discharge of the mortgage, and we think the amount was properly allowed out of the proceeds on the principle of subrogation.

The next objection is to the allowance to the administrator of an item of interest for moneys advanced by him to pay the interest-bearing debts of the intestate out of his own funds; we see no objection to this allowance. True, the administrator was not obliged to make any advances out of his own funds to pay the debts of the intestate, but as the debts were interest-bearing debts, we do not see how any injustice could be done by this allowance which might be made to the administrator also on the principle of subrogation."

*Spring & Van Aernam*, for the appellant. *J. H. Waring*, for the respondent.

Opinion by TALCOTT, P. J.

Present — TALCOTT, P. J., SMITH and HARDIN, JJ.

Decree of the surrogate affirmed, without costs to either party.